You may proceed. Thank you, Your Honor. May it please the court, my name is Russell Petty and I'm representing the plaintiff and the appellant William White. Your Honors, the claimants in ERISA insurance claims face a great many hurdles and disadvantages that are not faced by other persons seeking, litigants seeking insurance benefits. You have no right to a jury at trial. You're not entitled to present any witnesses. You're actually not entitled to present any evidence at all except what is in a fixed record, a fixed record which in many cases was compiled prior to the plaintiff recognizing that he needed an attorney. Because of the limited admissibility of evidence, there's very limited and sometimes no discovery at all, and then when you finally get to trial, you have to not just show that you're right and are entitled to benefits, but you have to show that the insurance company's decision in the language of this court's Saloma decision is illogical, implausible, and or without support in the record. That's a daunting standard and in United Policyholders amicus brief at pages 16 through 19, they detail and list some of the great many cases where the courts acknowledged that the claimant had a valid and perhaps even winning claim, but ruled against the claimant because it was mandated by the standard of review. Let's just get to that then. So I'm looking at ER 56, which is the policy exclusions. So regardless of the standard of review in this case, I think it's established that your client was driving a motorcycle but did not have a motorcycle license, correct? That is correct, Your Honor. Well, a class M endorsement. I mean, you had a driver's license. Right, but he was not licensed to drive the motorcycle. That is correct, Your Honor. Like, I have a driver's license, but I'm not licensed to drive a truck of a certain size, and I'm not licensed to drive a motorcycle. Do we need, I mean, obviously, I understand your argument, but they're going to come back and say, and they did say this in their brief, standard of review doesn't matter. Because under the policy, you have to have a license for the vehicle you're driving, and he didn't. So he's not covered, and we don't need to get into de novo or abuse of discretion. Why are they wrong about that? Your Honor, I'm going to turn that around and agree with you that in one sense the standard of review doesn't matter, because I believe that that language is plain and unambiguous, and the language of the exclusion simply isn't met here, and, you know, there's no possible way to construe the policy that it is. Now, what the exclusion says is there's no benefits to be paid if the employee is a driver in a motor vehicle accident if he or she does not hold a current and valid driver's license. It does not say, it could have, but it does not say a current and valid driver's license for the vehicle you happen to be driving at a time, at the time. So in your view, if he's driving a bus with 50 passengers, he'd be fine because he had a driver's license? No, but probably not, Your Honor. Why? Because the policy also has an illegal act exclusion, and driving a bus with 50 passengers without a license would probably fit within that. Well, but now you're kind of splitting hairs. Isn't it illegal to drive without a license applicable to the type of vehicle that you're operating? It is, but the illegal act exclusion in the policy only covers felonies and not this would either be a misdemeanor or an infraction if it was charged at all, and I have no evidence that it was. Well, we might keep arguing about discretionary or this or that, but the question is, we have this Wang case, and of course this panel can't overrule a prior panel of the court. Why doesn't Wang control? Your Honor, and I'm going to have to get back to Judge Owens' question.  Your Honor, I don't think there's any real distinction between Wang and Section 187 of the choice of law restatement. Excuse me, I'm sorry. Wang talks about a choice of law provision won't be enforced if it is fundamentally unfair. 187B talks about depriving a resident of a state of a fundamental right. I think they're both really saying the same thing, and in this case, the California legislature was very clear that it wrote this statute in order to protect the right of California residents to a fair judicial hearing, and I don't think there's really the, you know, Guardian never even really makes the argument that a right to a judicial hearing is not a fundamental right, and as a result, I think that either under 187B of the restatement or Wang, because in this case the choice of law provision would be used to deprive Mr. White of a fair judicial hearing, that's a fundamental right, and so therefore it should not be enforced under either standard, and there really is no argument that it is. Now, returning to Judge Owens' question, look, I mean, the language of the exclusion is clear. Current and valid driver's license. We all know what a driver's license is. I submit that everybody in this courtroom probably has one in their wallet or their handbag. What does current mean? Current means it hasn't expired. What does valid mean? Valid means it was issued by the appropriate authority and hasn't been revoked yet. If someone was to ask me, back up for a second, under the Evans standard, this language is supposed to be interpreted in an ordinary and popular sense as would a person of average intelligence and experience. If someone were to ask me, Mr. Petty, have you got a driver's license, my response would be, oh, what kind of driver's license? My response would be yes. You know, of course I have one, because that's what someone would mean. Now, I understand the problem that Judge Schroeder is raising, which is, you know, does it make any sense to have an exclusion which doesn't relate to the particular vehicle which is being driven? And I've really got two responses to that, and response number one is it doesn't matter. You know, what the insurance company was thinking when it wrote this exclusion, you know, isn't the guidance here. We have to look at the language that they used and the fact that they didn't say for the vehicle to be being driven. You know, you just can't add that. I just want to say that I'm always happy to be compared with Judge Schroeder, but I'm not Judge Schroeder. I'm so sorry. It's all right. I'm so sorry, Your Honor. We are both females. My apologies. The other argument is, I mean, I think it misunderstands how these exclusions come about. You know, what happens is some actuary puts on her green eye shade and looks at data sets and excludes risks based on, you know, just sort of what the data tells her, and I think in this case the data says that someone with a motor vehicle without any driver's license at all presented an unreasonable risk. You know, just as an example of the way these things are written, you know, the exclusion also has an exclusion for, you know, being in an armed conflict, but then it has another exclusion for being in the military. Well, why do you need the exclusion in the military if you've already excluded being in an armed conflict? Again, some actuary looked at the data and realized correctly, as it turns out, that just being in the military is dangerous. Well, I understand your problems as a prior trial lawyer, and I've gone with these insurance contracts forever, but we have to go by the law and that somebody's going to have to be disappointed, but you might help me with this. Why should we limit Wang to only addresses only choice-of-law disputes but implicate different statutes of limitations when the rule in Wang is so broadly, so very broadly worded? Well, I mean, the standard from Wang is unreasonable or fundamentally unfair. Speak up just a bit, please. Oh, I'm sorry, Your Honor. Is this better? Yes. The fundamental unfairness was not addressed in Wang, and I think this court, I mean, that language has to mean something. In Wang's case, it was a perfectly reasonable statute of limitation just from a different state, and there was no reason why it was, and there really was not even an argument that it was fundamentally unfair. In this case, as I said, the right to a fair judicial hearing is obviously a fundamental right. It's probably the most fundamental right because it's the right that protects all the other rights, and if being deprived of a fair judicial hearing does not constitute deprivation of a fundamental right, then it's difficult to understand, you know, what could possibly meet that standard, and, you know, as I said, the language fundamentally unfair has to mean something, and so, Your Honor, I submit that that's what it means. Let me anticipate what we might hear from the other side, and I'd appreciate your comments now, and that is that ERISA is a national statute, and when the pension reform was passed so that we would have uniformity among employee benefit plans, there was this notion that it's national and it shouldn't be state by state, and so under your theory, it would really depend on what state the plaintiff lived in, not the choice of law. Why does that make sense from an either practical or public policy standpoint? You know, I'm so happy you asked that question because that really gets into an issue that basically is not in my reply brief because I, you know, thought about it some and came up with it when I was preparing for oral argument. The concerns about uniformity are wildly overdrawn, and the reason for that is because in this circuit, at least, we already have uniformity. This court in McClure and Evans, and I didn't cite to McClure, but that's at 84 F. 3rd, 1129, determined that in this circuit, at least, insurance claims under ERISA would not be referenced by state insurance law. State insurance law of contract interpretation was held to be preempted, and all these cases are therefore decided strictly under federal common law, a uniform body of federal common law, and so in the vast majority of cases, you know, a state choice of law provision simply doesn't matter because regardless of whether you've got Alaska law or Florida law, California law, in this circuit, it's going to be decided under a uniform body of federal common law. There are only three exceptions to that. One of them is with respect to mandated medical benefits under Massachusetts v. MetLife. The other one is the notice prejudice rule under Cisneros, and the third is the ban on discretionary clauses, which, you know, this court held was saved from preemption in Oshinkowski and Morrison, and if you're not in one of those three situations, all you're going to get are federal common law, and that's not the case in all circuits. In Durden, for example, there was an issue of which of two women was the lawful spouse of the decedent, and the court struggled to come up with what state law should apply. Evans, this court faced a similar issue, and in spite of Judge Schroeder's concurrence, and that's the reason why I'm, you know, they reached that this is a decision that has to be decided under federal law. You could certainly look to state law and other federal cases in reaching the decision, but none of that is binding because these are federal decisions. Your Honor, I'd like to make one other point that I didn't have an opportunity to raise in my report because it didn't occur to me at the time, and that's there is no valid discretionary clause identified. I made that argument in the opening brief that the discretionary clause relied on by the district judge was in the certificate, which expressly says it's not part of the policy. Under Pritchard, then, the grant of discretion is not enforceable. Answering brief, guardian says no matter because the policy incorporates the certificate. It points to language at 2ER165. That language is not in the ED&D policy under which Mr. White is seeking benefits, which is at 2ER28-157. You can cite a case to us that's not in our briefs. We like to have you give the citation to the clerk so that we don't have to go fish for it. Is that Pritchard or is that the McClure case, Your Honor? I'll give both citations. I think Pritchard is in the briefs. Pritchard is in the briefs. McClure is not. I will provide that to the courtroom deputy. Or you can do a 28-J so it's filed with the court, which is even better. I will do that, and I'll see that my time is expired, and thank the court for its attention. Thank you, counsel. Good morning, Your Honors. Jordan Altura for Appalee Guardian Life Insurance Company. The district court correctly determined that the choice of law provision in the policy is enforceable and that the abuse of discretion standard of review applied. The standard set forth in Wang v. Kagan is based on decades of precedent from the Supreme Court and this court, and it has been followed by several circuit courts of appeals and district courts under similar facts to reach the exact same conclusion the trial court reached in this case, which is that the party's choice of Florida law should be enforced. It was not fundamentally unfair. It was not unreasonable to do so, and there is no basis to overrule Wang or limit it to its facts. But with this said, the court should not even need to reach the choice of law question. This is a simple case and one that this court has seen before. In fact, Your Honor, Judge Owens was on the panel that decided Earl v. Unum, and in Earl, which was decided about five years ago, the trial court reached the same conclusion that the court reached in this case. The trial court enforced a choice of law provision where the chosen state's law did not have a discretionary ban. The arguments being asserted here today were asserted by appellant's counsel in the same case. So it's the same counsel that represented Mr. Earl that are here today. Persistence does not pay off in this situation. It is the same issue, and the court should not even need to reach the choice of law question, because the result will be the same under any standard of review. The policy language could not be clearer. Unfortunately for appellant, he was operating a vehicle and was involved in a motor vehicle accident, driving a vehicle he did not have a license to drive. As unfortunate as that is, Guardian was required as the planned fiduciary to enforce those terms and the district court was required to apply the abuse of discretion standard of review. Of course, he would argue, as he has, that he did have a driver's license, and he was operating a motor vehicle and he had a driver's license, and that's all that the policy language says. So on its face, they've inserted an additional term into that. Why not? Understood, Your Honor, and there's no need to insert an additional term. The provision, consistent with ERISA policy, the goals of being consistent, efficient, and having laws that can be easily applied by the administrator, the provision is intentionally broad. It doesn't distinguish between vehicles. It says, if you are involved in a motor vehicle accident and you don't have a valid license, that obviously applies to the vehicle being driven. Otherwise, we would have an absurd result. As the court pointed out, driving a school bus, driving a semi-truck, certainly nobody would contend that they were entitled to drive a semi-truck and that they were without a valid license for that vehicle. And the same applies here to a motorcycle. A specific license is required to operate a motorcycle, and the policy language is clear and must be interpreted consistent with the expectations of a person of ordinary intelligence. That's what the court held in Padway, and we submit that anyone with an average ordinary level of intelligence would understand that they are not covered for an accident that arises while they're operating a vehicle for which they are not validly licensed. As long as you're interrupted by you, let me ask a question. Thank you, Your Honor. If we elect to apply the restatement approach to the choice of law issues here, it concerns me that there's a local as well as a national interest involved, and doesn't California interest in voiding discretionary clauses outweigh any of Florida's interest in this matter? Respectfully, Your Honor, no, it does not. Appellant has not explained, has not met their burden of demonstrating why California's interest under the restatement test is materially greater than Florida's. It's not a question of being greater. It must be materially greater, substantially greater. Appellant has not satisfied his burden of demonstrating that California's interest is materially greater than Florida's interest in seeing that businesses operating in Florida... Well, California is worried about people that hit other people and whether or not there's insurance so that taxpayers don't have to pay. That's a fairly substantial interest, isn't it? How do we balance between the two interests? Well, I think, Your Honor, and of course California does have an interest, and I would never suggest that it doesn't. But the question is, is it materially greater? Correct, and I'm toying with the question. How do you respond to that to make this choice? Well, Your Honor... Social choice. Absolutely, Your Honor. to overrule Wang and find that the restatement applies, the court would have to essentially overlook decades of jurisprudence holding that ERISA's policy goals are extremely important. So your point is that decision's already been made. We don't have to make it. We just have to follow Wang? Well, Your Honor, I do believe that Wang, the restatement approach, they both turn on reasonableness. Ellis, the Tenth Circuit in Ellis, explains this. And the court in Ellis held that focus on the primacy of the plan documents, the importance of an ERISA plan document, and explained that in the situation where you're dealing with a business that's located in the state whose law has been chosen, that the policy goals of uniformity, consistency, and encouraging businesses to provide group insurance for their employees, those policy goals cannot be ignored. Congress enacted ERISA for a reason. And if a court, if plan administrators are required to apply a patchwork of state laws that can run afoul of ERISA's policy goals. So back to the court's point, Your Honor, I do believe that issue's already been decided. And in a situation such as this one, where a handful of people are working for an employer based in another state that doesn't have a discretionary ban, it would not be proper to determine that California's interest is materially greater than in other states under those circumstances. It'd be a real hometown decision if we did that, correct? It could be, Your Honor. Thank you. That's a good response. I appreciate it. Thank you. Thank you very much, Your Honor. And back to Wang, Your Honor, you were on the case that Wang followed. You were on the panel that decided Dempsey versus Norwegian Cruise Lines. And this case, Wang and the cases prior to Wang are all based on Supreme Court precedent. It should be followed in this case. The Ninth Circuit has a standard. But, of course, after Wang, we then have the case that basically says that in federal question issues, we follow federal law, federal choice of law. And that is after Wang. And that, of course, can be seen in tension with Wang. So do we have two conflicting cases? And, Your Honor, I'm not sure which case in particular you're referring to, but if the choice of law, I do not believe we have tension because we come back to the reasonableness. Well, I think it's the Miller case, and it's decided in approximately 2017, so long after Wang, which basically said you apply in any federal question, you're going to use the restatement of conflicts of law to resolve that. Of course, ERISA is a classic federal question case. Yes, Your Honor. So I am not familiar with that decision. Forget the decision. How about the principle? And that's where I was going, Your Honor. I think these principles can be reconciled because, again, because Wang and other cases that have followed Wang or enforced contractual choice of law provisions under ERISA have explained that it's critical to recognize the policy goals underlying ERISA, which, as the Court notes, is obviously an important federal question issue. I think the Tenth Circuit in Ellis goes to great lengths to explain why it is so important to remain consistent with Congress' intention in enacting ERISA. I hope that answers your question, Your Honor. Do you know of another situation where there's a carve-out for a specific federal statute like ERISA? I cannot say that I am, Your Honor, although I don't know if there is a carve-out here in that the tension exists because of the savings clause under ERISA. That's why we have this tension. And obviously that's why we're here today, because we have a state, California, that has expressed its policy of wanting to ban discretion in ERISA plans. But many states haven't taken that step. Florida has not taken that step. So I think that's why we find ourselves in this position today, and I don't know if there are other federal statutes that have a savings clause such as ERISA does. I would also point out that this Court has followed Wang. It followed Wang in the Fenberg case versus Cowden, in which it reversed the trial court's decision to apply a de novo standard of review and remanded for application of the abuse of discretion standard of review. In addition to this Court, three other circuit courts of appeal have enforced choice of law provisions and applied the abuse of discretion standard. The Eighth Circuit in Brake versus Hutchinson, the Fifth Circuit in Jimenez versus Sun Life, the Tenth Circuit in Ellis, all upheld choice of law provisions and an abuse of discretion standard of review. The unfairness issue that appellant raised has been addressed by the courts. In Ellis, the appellant asserted that it would be unfair not to apply the law of the forum state. In Ellis, the Tenth Circuit explained the arguments are unpersuasive and noted that the choice of law provision was clear on its face of the policy and that the Supreme Court has endorsed choices by ERISA plans to provide abuse of discretion review. And citing Concrite, the Court noted, granting deference to the administrator promotes efficiency, predictability, and uniformity. This is a unique issue for employers that have plans covering employees in multiple states. And as Guardian Zemeckis points out in its brief, in their brief, this is a growing problem. And it's all the more reason that the Court should remain consistent with weighing and continue under the circumstances where it's not fundamentally unfair to apply an abuse of discretion standard. There is no reason to reverse the Court's course in that regard. Appellant was not deprived of a fair and unbiased hearing by the trial court. The suggestion in the reply brief that any time an abuse of discretion standard of review applies that a claimant cannot get a fair and unbiased hearing is frankly concerning in that it disregards decades of Supreme Court and Ninth Circuit jurisprudence applying the abuse of discretion standard of review. There is a tempered standard. Your Honor, Judge McKeon was on the Court that decided a body. And in that case, the Court explained that a heightened level of scrutiny might apply. Having to be governed by the state of Florida, the laws of the state of Florida, when appellant was working for a Florida company and was one of only a few individuals working in the state of California, is not unfair. It's simply the standard that appellant didn't want to apply. That doesn't mean it's unfair. Fundamental unfairness would mean being deprived of a hearing altogether. And suggesting that it's fundamentally unfair to apply the abuse of discretion standard of review really does, well, let's just use this case as an example. Let's wrap it up because we're actually over time. Oh, Your Honor, my clock says 40 seconds. It's getting higher because we're past. My apologies, Your Honor. We're using our time. Thank you for pointing that out. I'll just close on the fact that I don't think the Court even needs to reach these issues because the policy language is so clear in this case. Thank you very much, Your Honor. I'll give you one minute, counsel. Thank you, Your Honor. Hold on one second. Let the timer catch up. Okay. Now you may proceed. I'd like to make three points, Your Honor. First off, with respect, I mean, Guardian's counsel is, I mean, you can't argue two things at the same time. He's arguing that this Court should enforce Wang, and it should. But Ellis, the Tenth Circuit case, expressly rejected Wang. And so this Court can't do this, you know, follow Ellis and at the same time be faithful to the decision in Wang. There's obviously a split in the circuit. And Ellis not only just said it disagreed with the Ninth Circuit, but it also, its view of the savings clause that was expressed by this Court in Cisneros and Morrison is completely at odds. And so obviously the two circuits take a radically different approach to the intent of the savings clause. With respect to the California interest, the California interest is written into the statute because it says that it applies to all California residents regardless of where the policy issues. And there's no need to overrule Wang. I'm not suggesting that for a second. I believe that the language in Wang is completely consistent with Section 187 of the restatement, and I think that the two need to be harmonized. Thank you very much, Your Honors. I certainly appreciate the time and trouble. All right, thank you. Thank you to both of you for your briefing and argument in this case. This matter is submitted and this panel is finished. Judge Wallace and I will reconvene at 11 o'clock for the Love case with a different judge as our third person. So thank you, Judge McKeon. Thank you.
judges: WALLACE, McKEOWN, OWENS